IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JEFF LOWERY and LISA LOWERY, RANDY GILES, and MICHAEL KELLEY,<br><br>Plaintiffs,<br><br>v.<br><br>JEFFERSON COUNTY BOARD OF EDUCATION, DOUG MOODY, individually, and GREG SHARPE, individually and in his official capacity as a member of the Jefferson County Board of Education,<br><br>Defendants. | ) | CIVIL ACTION NO. __________ |

**COMPLAINT**

**INTRODUCTION**

This is an action brought on behalf of a group of parents of students from Jefferson County High School ("JCHS") and their attorney to vindicate their right to freedom of speech under the Constitution of the United States and the Constitution of the State of Tennessee. The individual Defendants knowingly and intentionally violated Plaintiffs' constitutional rights by denying them an opportunity to speak at a meeting of the Jefferson County Board of Education, which had been established as a public forum. Defendants actions were done in contravention of Plaintiffs' clearly established rights under the First Amendment of the Constitution of the United States and Article I, Section 19 of the Tennessee Constitution and constituted a prior restraint by Defendants based upon the content of Plaintiffs' speech. In addition, the Jefferson County Board of Education has adopted and enforced a facially invalid policy that itself violates the First Amendment and Article I, Section 19 of the Tennessee Constitution.

Plaintiffs seek declaratory and injunctive relief as well as compensatory damages, nominal damages, punitive damages, attorneys' fees, and costs.

## JURISDICTION AND VENUE

1. This action arises under Article I Section 19 of the Tennessee Constitution and under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs' cause of action is grounded on 42 U.S.C. § 1983. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

2. This Court is authorized to award Plaintiffs declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

3. This Court is authorized to award Plaintiffs actual damages, nominal damages, and punitive damages for the past loss of constitutional rights pursuant to 42 U.S.C. § 1983.

4. This Court is authorized to award Plaintiffs their reasonable costs of litigation, including but not limited to attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988.

5. Venue is appropriate in this judicial district and division, pursuant to 28 U.S.C. § 1391, because Defendants reside and are situated in this judicial district and division and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district and division.

## PARTIES

6. Plaintiffs Jeff Lowery and Lisa A. Lowery ("Mr. & Mrs. Lowery") at all times relevant to this Complaint were adult residents of Jefferson County, Tennessee.

7. Plaintiff Randy Giles ("Mr. Giles") at all times relevant to this Complaint was an adult resident of Jefferson County, Tennessee.

8. Plaintiff Michael Kelley ("Kelley") is a licensed Tennessee attorney, having practiced law in the State of Tennessee since 1990. At all times relevant hereto, Kelley served as the attorney for Mr. Giles and Mr. and Mrs. Lowery, and he was selected by Mr. and Mrs. Lowery and Mr. Giles "to speak on their behalf" before the Jefferson County Board of Education pursuant to School Board Policy No. 1.404, entitled "APPEARING BEFORE THE BOARD" (the "Policy").

9. Defendant Jefferson County Board of Education ("the Board") is a public entity established, organized, and authorized by the laws of the State of Tennessee, with the authority to sue and be sued. The Board is the entity that is charged with the ultimate responsibility for the operations and maintenance of the public schools in Jefferson County, Tennessee, including Jefferson County High School ("JCHS"). The Board promulgates the policies, practices, and customs for operation of the Jefferson County School District. In fulfilling its duties, the Board acts by and through its various officers and administrators, including but not limited to the individual Board members, the Director of Schools, the Principal of JCHS, the Athletic Director of JCHS, and the Head Football Coach of JCHS. The Board was responsible for ensuring that JCHS and its officers, agents, servants, and employees act in conformity with the United States Constitution. At all relevant times, the Board was a "person" acting under the color of state law as that phrase is used in 42 U.S.C. § 1983.

10. Defendant Doug Moody ("Moody") is and was at all times relevant to this Complaint the Director of Schools in Jefferson County, Tennessee. As such, Moody is the highest ranking official in the Jefferson County School District, reporting and answering directly to the Board pursuant to the terms of his contract with the Board. As such, Moody is one of the two final decision-makers with respect to determining whether individuals will be permitted to

speak at regular meetings of the Board pursuant to the Policy. Moody is charged with the responsibility for, and general administration of, the schools in Jefferson County, Tennessee, including JCHS, including the implementation of policies, practices, and/or customs of the Board. In his capacity as the Director of Schools, Moody is responsible for ensuring that JCHS and its officers, agents, servants, and employees act in conformity with the United States and Tennessee Constitutions. At all relevant times, Moody acted under color of state law within the meaning of 42 U.S.C. § 1983. Moody is sued in his individual capacity.

11. Defendant Greg Sharpe ("Sharpe") is the chairman of the Board. Defendant Sharpe was elected by the citizens of Jefferson County. Upon information and belief, Sharpe is a member of the Executive Committee of the Board. In that capacity, Sharpe participated in the final decision to prohibit Plaintiffs from appearing before the Board on December 8, 2005. Along with Moody, Sharpe is the final decision-maker with respect to determining whether individuals will be permitted to speak at regular meetings of the Board pursuant to the Policy. In his capacity as Board Member and Chairman, Sharpe was responsible for ensuring that the School District and its officers, agents, servants, and employees acted in conformity with the United States and Tennessee Constitutions. At all relevant times, Sharpe acted under color of state law within the meaning of 42 U.S.C. § 1983. Sharpe is sued in his individual as well as in his official capacity as a member of the Board.

**FACTS**

12. Plaintiffs Mr. & Mrs. Lowery and Mr. Giles are parents of high school students at JCHS in Jefferson County, Tennessee. On October 10, 2005, Plaintiffs' sons were dismissed from the varsity football team after the JCHS varsity head football coach, Marty Euverard ("Euverard"), learned that the boys had signed and/or circulated a petition that criticized him.

Plaintiffs aver that their boys were improperly dismissed from the football team in retaliation for engaging in conduct clearly protected by the United States Constitution and the Constitution of the State of Tennessee, namely the circulating and/or signing of the petition. Plaintiffs aver that any other explanations for such dismissal are mere pretext.

13. Meetings of the Board are subject to the provisions of the Tennessee Open Meetings Act (the "Sunshine Law"), T.C.A. § 8-44-101 et seq. Records of the Board are subject to the provisions of the Tennessee Public Records Act, T.C.A. § 10-7-503 et seq.

14. Pursuant to the requirements of state law, the Board holds regular meetings to conduct business relating to the operation of all public schools in Jefferson County, exclusive of city schools in other school districts.

15. In addition to these requirements, Sharpe and the Board have adopted the Policy as an official Board policy, which permits individuals to appear for up to five (5) minutes before the Board. The Policy has been in effect since September 12, 1996. Among the stated purposes of the Policy is "[t]o allow *everyone* a fair and adequate opportunity to be heard . . . ." [Emphasis added.] In pertinent part, the Policy states as follows:

> **APPEARING BEFORE THE BOARD**
>
> Individuals desiring to appear before the Board may request placement on the agenda by contacting the office of the superintendent five (5) days before the meeting. The person initiating the request will be notified by the superintendent or the chairman as to whether the request has been granted and will be given five (5) minutes to speak when their topic of interest is addressed on the agenda.
>
> The director of schools shall take appropriate steps to determine that appeals or appearance before the Board are not frivolous, repetitive, nor harassing in nature.
>
> Delegations must select only one individual to speak on their behalf.

> Recognition of individual who do not have children in the school system or are not citizens of the county will be determined by a majority vote of the Board.
>
> Individuals speaking to the Board shall address remarks to the chairman and may direct questions to individual board members or staff members only upon approval of the chairman. Each person speaking shall state his name, address, and subject of presentation along with sufficient background material.
>
> The chairman shall have the authority to terminate the remarks of any individual who does not adhere to the above rules or chooses to be abusive to an individual board member or the Board as a whole.
>
> . . . .

A copy of the official Policy is attached hereto as Exhibit "A" and incorporated herein by reference. The Policy was in force at all times relevant to this action and is in force at the present time.

16. Subsequent to the dismissal of his son from the football team, Mr. Giles met individually at various times with Moody, Sharpe, JCHS principal Dale Schneitman, and Athletic Director Craig Kisabeth concerning his son's dismissal from the team and other serious issues involving Euverard and the football program. Subsequent to the dismissal of their son from the football team, Mr. and/or Mrs. Lowery met individually at various times with Moody and Schneitman concerning their son's dismissal from the team and other serious issues involving Euverard and the football program. However, because the football season was not over at the time of the dismissal, Plaintiffs determined not to pursue the matter publicly before the Board until the season was over.

17. On November 10, 2005, at the first meeting after the last game of the football season, Kelley appeared before the Board pursuant to the Policy on behalf of Mr. Giles, Mr. and Mrs. Lowery, and other families who had children dismissed from the team. Kelley complied in

all respects with the Policy and was not abusive either to any individual Board member or to the Board as a whole.

18. In substance, Kelley asserted that the First Amendment rights of his clients' sons had been violated by Euverard, that the parents had gone up the administrative "chain of command" without any result, and that the Board was his clients' appeal of last resort. Kelley requested that the Board conduct an independent investigation into the issue; retain John Duffy, Robert Watson, or another lawyer qualified in civil rights litigation; and, among other things, put the student-athletes back on the team. The Board, Sharpe, or Moody are in possession of an audio tape of Kelley's comments at the meeting.

19. Subsequently, Kelley sent a letter to Sharpe and to each of the Board members. A copy of that letter is attached hereto as Exhibit "B" and incorporated herein by reference. In that letter, Kelley reaffirmed his clients' request for an investigation, addressed additional concerns, and requested a status report from the Board at its December 8, 2005, meeting.

20. Between the sending of the letter and December 8, 2005, Kelley had no contact of any kind with Moody, Sharpe, Schneitman, Kisabeth, Euverard, the Board, or any of the Board members.

21. Having agreed to wait for a report until the December 8, 2005, meeting of the Board, Plaintiffs did not attend the second November meeting of the Board.

22. On December 2, 2005, more than five (5) days before the December 8 Board meeting, Mrs. Lowery contacted the appropriate and authorized employee of the Board or School District to request that Kelley be placed on the agenda. This was the same process that she had used earlier for Kelley to be placed on the November 10 agenda.

23. At that time, Kelley's name was placed on the agenda. However, Mrs. Lowery was told that, as before, someone would call on the day of the meeting to confirm that Kelley would be present to speak. Aware that she was likely to be out of town on the day of the meeting, Mrs. Lowery indicated that Mr. Giles would make the confirmation.

24. On the following Friday, Mr. Giles met in person for the first time with Sharpe to outline his various concerns with the treatment of his son at the hands of Euverard, his concern about his son's dismissal, and his experiences in dealing with Moody, Schneitman, and others in the administration.

25. Thereafter, on Monday, December 5, prior to the scheduled Board meeting on Thursday, December 8, Moody called Mr. Giles about comments that Mr. Giles had allegedly made to Sharpe. At that time, Moody said that he had been given Giles' number and his and the Lowery's request for Kelley to speak at the Board meeting. Moody said: "We are going to deny your request to speak because of the possibility of a lawsuit, and I am not going to let him have a forum to tear down my employees."

26. Plaintiffs aver that, even if the Policy is valid on its face, there was no legitimate basis for Moody, Sharpe, or the Executive Committee to engage in this prior restraint of the rights of Plaintiffs to exercise their First Amendment rights in the public forum established by the Board pursuant to the Policy. There was no evidence whatsoever that Kelley intended to use the public forum to "tear down" Jefferson County employees, and the mere possibility of a lawsuit is not even listed as a basis for denying access to the forum.

27. Subsequently, on December 8, 2005, Plaintiffs attended the regular Board meeting along with their sons and along with other parents and student-athletes who had been dismissed from the team. At the "public forum" section of the meeting, Sharpe asked if any

teachers wanted to be heard and asked if any students wanted to be heard. In addition, a parent of a student at another Jefferson County school was permitted to address the Board regarding the treatment of her son by other students on a Jefferson County school bus. Kelley was not permitted to speak. At the conclusion of this section of the meeting, Sharpe whispered with Moody and other members of the Board; however, this was unintelligible to Plaintiffs.

28. The meeting was tape-recorded by the members of the Board or Moody. After Plaintiffs were denied the tape and served a request under the Open Records Act, the tape was finally provided. However, the unintelligible comments at the end of the meeting either have been erased or were made after the tape was cut off by Sharpe, Moody, or their agents.

29. Having received no response to their repeated requests for an investigation and having been denied access to the public forum created under the Policy, Plaintiffs, their sons, and other families filed an action in this Court on December 9, 2005, under 28 U.S.C. § 1983 (Civil Action No. 3:05cv560) based upon the violation of the student-athletes' exercise of their right to petition under the First Amendment (the "Lawsuit").

30. Subsequent to the filing of the Lawsuit, Sharpe stated that the reason for Kelley being removed from the agenda was that the Board had already heard from him on the same subject matter. Nothing was mentioned by Sharpe regarding the alleged fear of employee harassment or the possibility of a lawsuit.

31. Plaintiffs aver that the reasons given by Moody and by Sharpe are mere pretexts. In fact, Kelley was denied the opportunity to speak on behalf of Mr. Giles and Mr. and Mrs. Lowery because of the anticipated content of his speech. In blatant and flagrant violation of the First Amendment rights of Plaintiffs, Defendants Moody and Sharpe silenced Plaintiffs by engaging in a prior restraint of their right to request a status report and otherwise to address the

Board on matters of grave public concern. Moody and Sharpe apparently assumed that Kelley's comments would be sharply critical of the conduct of Euverard, Kisabeth, and Schneitman in connection with the football program or that he would criticize the anemic and dilatory response of the Board or the individual members of the Board to the request. It was Moody and Sharpe's intent to silence and chill this adverse viewpoint.

**PLAINTIFFS' FIRST CAUSE OF ACTION**
**(VIOLATION OF PLAINTIFFS' RIGHT TO SPEAK AT A DESIGNATED PUBLIC FORUM)**

32. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1 through 31 of this Complaint.

33. As a direct and proximate result of the aforementioned acts engaged in under the color of state law within the meaning of 42 U.S.C. § 1983, Defendants have violated Plaintiffs' clearly established constitutional right to freedom of speech under the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment. In particular, Defendants Moody and Sharpe improperly denied the Plaintiffs access to a designated public forum.

34. Plaintiffs' desire to air their grievances constituted an exercise of protected speech under the First Amendment. Pursuant to the Sunshine Law, school board meetings must be open to the public. By adopting and implementing the Policy, the Board created a designated public forum, open to adverse viewpoints. Having created a designated public forum, Defendants were only permitted to establish reasonable time, place, and manner regulations, not content-based prohibitions, absent a compelling state interest. Under no circumstances, however, may a state restrict free speech in an effort to suppress expression merely because public officials oppose the speaker's viewpoint.

35. Plaintiffs aver that Defendants' actions amounted to an unlawful restriction on Plaintiffs' right of free speech in a designated public forum. Such rights are clearly established under the First Amendment to the United States Constitution. Defendants' only reason to prohibit Plaintiffs' exercise of their free speech rights was based upon their opposition to the Plaintiffs' views and the anticipated content of Plaintiffs' speech.

36. Defendants' conduct also violates Article I, Section 19 of the Constitution of the State of Tennessee, guaranteeing freedom of expression.

37. Defendants' acts resulted in actual damages to Plaintiffs. In the alternative, Plaintiffs are entitled to nominal damages as a result of their constitutional rights being infringed. Defendants' acts were intentional and malicious, designed to chill Plaintiffs' exercise of their First Amendment rights.

38. In addition, Plaintiffs are entitled to exemplary or punitive damages because Moody has expressed a disdain for any lawsuit to vindicate Plaintiffs' constitutional rights, stating that Defendants have insurance coverage to indemnify them from all defense costs and monetary damages. Only an award of significant exemplary or punitive damages will be sufficient to deter Moody from such unconstitutional conduct in the future.

39. As a result of Defendants' conduct in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Constitution of the State of Tennessee, Plaintiffs are suffering irreparable harm for which there is no adequate remedy at law. In particular, as long as the Board maintains the position that Plaintiffs cannot speak at Board meetings based upon the anticipated content of Plaintiffs' speech, Plaintiffs suffer a real, continuing injury and damage, for which money damages are an insufficient remedy.

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(FACIALLY INVALID PRIOR RESTRAINT OR, IN THE ALTERNATIVE, UNCONSTITUTIONAL PRIOR RESTRAINT AS APPLIED)**

40. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1 through 39 of this Complaint.

41. All acts herein of the Defendants, and all persons acting in active concert or participation with them, were done and are continuing to be done under color and pretense of state law.

42. As a direct and proximate result of the aforementioned acts engaged in under the color of state law within the meaning of 42 U.S.C. § 1983, Defendants have violated Plaintiffs' clearly established constitutional right to freedom of speech under the First Amendment to the United States Constitution as applied to the state and their political subdivisions under the Fourteenth Amendment. In particular, the Policy, which is enforced by Defendants, is a facially invalid rule against prior restraints. In the alternative, the Policy is unconstitutional as applied to Plaintiffs.

43. When a policy inflicts a prior restraint on speech by requiring a speaker to obtain a license, register, or perform other duties as a condition precedent to their being allowed to exercise their First Amendment rights, in addition to meeting the appropriate level of scrutiny, it must contain narrow, objective, and definite standards to guide the licensing authority. In addition, regulations imposing a prior restraint must provide for prompt judicial review of all decisions denying the right to speak.

44. Plaintiffs' right to speak at the meeting is a clearly established constitutional right under the First Amendment.

45. The Policy does not contain narrow, objective, and definite standards to guide the director of schools for the Board in the exercise of his/her discretion. Likewise the Board Policy does not provide for prompt judicial review of the Board's denial of petitioners' requests to speak at school board meetings. The Policy, therefore, is a facially invalid prior restraint on Plaintiffs' right of free speech. In the alternative, the Policy, as applied, constituted an improper prior restraint on Plaintiffs' right of free speech.

46. Plaintiffs further allege that the phrase and individual terms "frivolous, repetitive, nor harassing in nature" are unconstitutionally vague. In particular, it is impossible either for a citizen speaker or for the enforcement authority (the Director of Schools and the Board Chairman) to determine what speech is permissible.

47. Defendants' conduct also violates Article I, Section 19 of the Constitution of the State of Tennessee, guaranteeing freedom of expression.

32. Defendants' acts resulted in actual damages to Plaintiffs. In the alternative, Plaintiffs are entitled to nominal damages as a result of their constitutional rights.

33. As a result of Defendants' conduct in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Constitution of the State of Tennessee, Plaintiffs are suffering irreparable harm for which there is no adequate remedy at law. In particular, as long as the Board maintains the Policy, Plaintiffs suffer a real, continuing threat that the Board will deny them access to future Board meetings.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

a. Declare that Defendants' actions, as alleged above, violate the First and Fourteenth Amendments to the United States Constitution;

b. Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declarations shall have the force and effect of final judgment and that the Court retain jurisdiction of this matter for the purpose of enforcing the Court's Orders;

c. Preliminary and permanently enjoin Defendants and all persons acting in active concert or participation with them, from further violation of Plaintiffs' constitutional rights by prohibiting Plaintiffs from speaking at meetings of the Board during the "public forum" portion of such meetings;

d. Declare the Policy to facially unconstitutional, or, alternatively, unconstitutional as applied to Plaintiffs or, in the alternative, declare that the phrase "frivolous, repetitive, nor harassing in nature" is unconstitutionally vague.

e. Award compensatory damages to Mr. and Mrs. Lowery and Mr. Giles in the amount of $5,000 dollars each for the past deprivation of their constitutional rights;

f. In the alternative, award nominal damages to Mr. and Mrs. Lowery and Mr. Giles for the violation of their constitutional rights;

g. Award Plaintiffs exemplary or punitive damages against Moody and Sharpe in the amount of One Hundred Thousand Dollars ($100,000) each to deter Defendants from such conduct;

h. Pursuant to 42 U.S.C. § 1988 and other applicable law, award Plaintiffs their costs and expenses incurred in bringing this action, including but not limited to their reasonable attorneys' fees; and

i. Grant such other and further relief as the Court deems equitable, just, and proper.

DATED this 16th day of December, 2005.

Respectfully submitted,

Michael S. Kelley (BPR #14378)
Matthew M. Scoggins, III (BPR #23126)
BASS, BERRY & SIMS PLC
1700 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37902
(865) 521-6200

*Attorneys for Plaintiffs*

# Jefferson County Board of Education

| Monitoring: Review: Annually, in September | Descriptor Term: Appeals to and Appearances Before the Board | Descriptor Code: 1.404 | Issued Date: 09/12/96 |
|---|---|---|---|
| | | Rescinds: | Issued: |

**APPEALS TO THE BOARD**

Any matter relating to the operation of the school system may be appealed to the Board. However, the Board desires that all matters be settled at the lowest level of responsibility and will not hear complaints or concerns which have not advanced through the proper administrative procedure from the point of origin.

If all administrative channels have been pursued and there is still a desire to appeal to the Board, the matter shall be referred in writing and the Board shall determine whether to hear the appeal.

**APPEARING BEFORE THE BOARD**

Individuals desiring to appear before the Board may request placement on the agenda by contacting the office of the superintendent five (5) days before the meeting. The person initiating the request will be notified by the superintendent or the chairman as to whether the request has been granted and will be given five (5) minutes to speak when their topic of interest is addressed on the agenda.

The director of schools shall take appropriate steps to determine that appeals or appearances before the Board are not frivolous, repetitive, nor harassing in nature.

Delegations must select only one individual to speak on their behalf.

Recognition of individuals who do not have children in the school system or are not citizens of the county will be determined by a majority vote of the Board.

Individuals speaking to the Board shall address remarks to the chairman and may direct questions to individual board members or staff members only upon approval of the chairman. Each person speaking shall state his name, address, and subject of presentation along with sufficient background material.

The chairman shall have the authority to terminate the remarks of any individual who does not adhere to the above rules or chooses to be abusive to an individual board member or the Board as a whole. [1]

Members of the Board and the superintendent may have the privilege of asking questions of any person who addresses the Board.

The intent of these rules is:

1. To allow everyone a fair and adequate opportunity to be heard;
2. To permit the director of schools to take direct action when policies have already been established by the Board on the subject of request;

EXHIBIT
A



3. To provide adequate time for the Board to obtain necessary information and give through consideration to situations where a policy does not exist, a change of policy is proposed, or an exception to policy is specifically requested;
4. To assure that the regular agenda of the Board is completed; and
5. To recognize the voluntary nature of the Boards' time and use that time efficiently.

Legal Reference:

1 TCA 39-17-306

Cross References:

School Board Meetings 1 400
Agendas 1.403
Complaints About School Personnel 5 502

Michael S. Kelley

PHONE: (865) 521-0369
FAX: (866) 292-2836
E-MAIL: mkelley@bassberry com

BASS, BERRY & SIMS PLC
*Attorneys at Law*
A PROFESSIONAL LIMITED LIABILITY COMPANY
900 South Gay Street, Suite 1700
Knoxville, TN 37902
(865) 521-6200

November 15, 2005

Mr. Greg Sharpe
Chairman, Jefferson County School Board
1221 Gay Street
Dandridge, TN 37725

**Re:** ***Jefferson High School Football Program***

Dear Mr. Sharpe:

This letter is a follow-up to my presentation at public forum at last Thursday's School Board meeting on behalf of several families of players who were dismissed by Coach Euvarard from football team. Once again, let me express my appreciation to you and the Board for your attentiveness to my presentation.

As I stated, the parents of these young men have taken their concerns up the chain-of-command -- to the athletic director, the principal, and the Director of Schools. However, nothing at all has been done. From the outset, Mr. Kisbeth has refused to recognize the legitimacy of the concerns. Despite having conducted a number of interviews over the last several weeks, Mr. Schneitman has apparently never completed his internal investigation. Finally, in their meeting with Mr. Moody last week, the Lowerys' complaints were dismissed out-of-hand, and he would not even review the documented incidents involving Coach Euvarard which they presented.
As the administrative agency of last resort, these parents and citizens are looking to you for an unbiased and honest evaluation of the problems plaguing this program and this school.

First, we would ask that you investigate the entire incident surrounding the circulation of a petition and take appropriate corrective action. It is beyond dispute that the protections of the First Amendment extend to public schools and, indeed, your own Handbook specifically recognizes the right of students to engage in protected speech. Tinker v. Des Moines Independent Community District, 393 U.S. 503 (1969), Jefferson County Board of Education Policy No. 6.704 ("Student Publications"). Further, courts have consistently held that the right to petition is among the protections afforded by the First Amendment. Meyer v. Grant, 486 U.S. 414 (1988). In fact, this right is so fundamental that courts have found that virtually any punishment for exercising such a right amounts to a constitutional violation. Rutan v. Republican Party of Illinois, 497 U. S. 62, 75 n. 8 (1990). In particular, I would draw your attention to Seamons v. Snow, 84 F.3d 1226 (10th Cir. 1996), in which the Court found that the

EXHIBIT
B

player's being dismissed from the football team for exercising a First Amendment right constituted a constitutional violation.

By now, you will undoubtedly have heard that the players were dismissed not for circulating the petition but for being insubordinate. Look into the facts of this situation, and you will find it to be a fabrication and a farce. The day before this occurred, Mr. Scheitman said there "have to be consequences" for the players. There were; the players were kicked off the team for circulating the petition. In fact, Mr. Scheitmann has said unequivocally that there will be no petitions in "his" school. In addition, other players were actually kicked off the team once Coach Euvarard found out they had signed the petition, but he now claims that these boys quit. Find out what the facts really are.

Secondly, please investigate the multitude of allegations concerning Coach Euvarard's treatment of his present, and former, players. Much of this information has previously been provided verbally and in writing to Mr. Schneitman, and individual players can tell you what they witnessed. In addition, my clients will provide written statements to you if this would be helpful.

Finally, please look into allegations of mandatory off-season conditioning, which is absolutely prohibited by TSSAA regulations. If true, there could be significant adverse consequences for the school as well as the coaches involved. These young men and their families have invested too much in the Jefferson County football program to see it sanctioned for violations of TSSAA rules.

We appreciate your consideration of these matters. Playing football for a successful Jefferson County High School football team is a dream come true for these young men. Because it is so important to their sons, it is of vital importance to these parents. But it is important to the parents not only that the experience be fun and rewarding for their sons but also that it be safe and that their sons learn the values of hard work, respect, honesty, discipline, integrity, and respect for law in the process. These young men and their families are committed to solve this problem, through whatever legal means is available. It is their hope that, unlike the Administration, the members of the Board will take this situation seriously, conduct an independent investigation, and remedy the problem.

Consistent with my comments at the Board meeting, we want to give you an opportunity to look into these matters carefully. We would appreciate a status report at the next meeting on December 8 and will wait until after that meeting to take any further legal action.

If you or your counsel has questions, do not hesitate to call me.

Sincerely,

Michael S. Kelley

MSK/hlr

cc: Michael Phagan
Emily A. Fox
David Lockhart
Anne Marie Potts
Bill Powell
John Neal Scarlett