**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **JEFF LOWERY, LISA LOWERY,** | ) | |
| **RANDY GILES, and MICHAEL KELLEY,** | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:05-CV-570** |
| | ) | **Judge Phillips** |
| **JEFFERSON COUNTY BOARD OF** | ) | |
| **EDUCATION, DOUG MOODY, and** | ) | |
| **GREG SHARPE,** | ) | |
|     **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This is an action brought under 42 U.S.C. § 1983 seeking damages for violations of the plaintiffs' First Amendment rights when they were denied the right to speak at a meeting of the Jefferson County Board of Education regarding their sons' dismissal from the Jefferson County High School varsity football team. The case was tried to a jury over a three-day period and resulted in a jury verdict in favor of defendants. Plaintiffs move the court for judgment in their favor as a matter of law, pursuant to Rule 50(b), Federal Rules of Civil Procedure, or, in the alternative, for a new trial, pursuant to Rule 59(a), Federal Rules of Civil Procedure.

1

As grounds for the motion, plaintiffs state that: (1) as a matter of law, defendants imposed an unconstitutional prior restraint on their speech prior to the December 8, 2005 meeting of the Jefferson County Board of Education; (2) defendants engaged in unconstitutional viewpoint discrimination; (3) the court erred when it found that Board Policy 1.404 was not unconstitutionally vague on its face; (4) the court erred when it found that the restrictions in Board Policy 1.404 where reasonable time, place and manner restrictions; (5) the jury's verdict was against the clear weight of the evidence; (6) the court failed to properly instruct the jury on the law relating to prior restraint; and (7) the court improperly admitted evidence of plaintiffs' communications with school administrators and individual Board members.

Defendants move the court for an order, pursuant to 42 U.S.C. § 1988, allowing them to recover their attorney fees from plaintiffs on the grounds that they are the prevailing parties and plaintiffs' suit was unreasonable, frivolous, groundless, meritless, vexatious or brought to harass or embarrass.

## Motion for Judgment as a Matter of Law

At the close of plaintiffs' proof at trial, plaintiffs moved the court for judgment as a matter of law pursuant to the provisions of Rule 50, Federal Rules of Civil Procedure, a motion which was renewed at the close of the proof and before submission of the case to the jury. The court reserved ruling on the motions. The jury returned a verdict finding that defendants did not violate plaintiffs' constitutional rights. On April 11, 2007, the court

entered judgment. Plaintiffs now renew their motion for judgment as a matter of law pursuant to Rule 50(b), which states:

> If the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment – if the motion addresses a jury issue not decided by a verdict – no later than 10 days after the jury was discharged. The movant may alternatively request a new trial or join a motion for new trial under Rule 59.

Fed.R.Civ.P. 50(b). A renewed motion for judgment as a matter of law should be granted if in "viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Noble v. Brinker Int'l, Inc.,* 391 F.3d 715, 720 (6th Cir. 2004).


Denial of Plaintiff's Request to Speak was not an Unconstitutional Prior Restraint

Plaintiffs argue that defendants engaged in an unconstitutional prior restraint of plaintiffs' rights under the First Amendment when they prohibited plaintiffs from speaking at the December 8, 2005 meeting of the Board, based upon the content of their speech. The term "prior restraint" is used "to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 550 (1993).

The court finds, as a matter of law, that the requirement that plaintiffs request permission to be placed on the agenda for the school board meeting does not constitute a prior restraint. Prior restraint arises where the content of the expression is subject to censorship. *O'Connor v. City and County of Denver,* 894 F.2d 1210, 1220 (10th Cir. 1990). Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated. *Id.* The Supreme Court has struck down regulations as unconstitutional prior restraints on speech where they gave "public officials the power to deny use of a forum in advance of actual expression." *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553 (1975).

Here, the Board did not ban the presentation of any communication or grant the Executive Committee the discretion to suppress any speech based upon its content. Plaintiffs were not prevented from expressing their message in any one of several different ways; they were simply denied a place on the agenda for the December meeting. The testimony presented to the jury showed that the Board did not forbid the plaintiffs from speaking at the December meeting. Further, the testimony showed that the Executive Committee made recommendations as to agenda items, but if the Board wanted to hear something, they were able to put it on the agenda for discussion or for action either before or during the meeting. Douglas Moody, Director of Schools, testified that any number of people have spoken at board meetings even though they did not get permission to do so prior to the meeting.

Moody further testified that the football situation was not the type of matter that the Board would ordinarily handle. He stated that the Board did not hire or fire coaches and that the Board did not have any authority regarding who would play on a football team or who would be dismissed therefrom. Those issues were within the province of the school athletic director, principal, and ultimately, the director of schools, not the Board.

Regarding the December 2005 Board meeting, Moody testified that he believed the presentation from Kelley would be harassing to the employees of the school system, based on comments made by Kelly at the November meeting. He also believed it would be repetitive of the statements made previously and that the presentation should not be authorized for a second time. For these reasons, Moody and Sharpe determined that Kelley would not be placed on the agenda to speak at the December meeting. Further, although plaintiff parents attended the December meeting, none of them stood up and asked to present comments or otherwise speak to the Board at the end of the meeting. In fact, the jury heard testimony that the plaintiff parents specifically did not intend to speak at the December board meeting.

The jury also heard testimony establishing that plaintiffs spoke before the Board as a unit in November as well as with the individual board members and school officials outside of the board meeting:

- Plaintiff Giles spoke to Kisbeth [Jefferson County High School Athletic Director] the day of the dismissals in October 2005.

- Plaintiff Giles met with Schneitman [Jefferson County High School Principal] the day of the dismissals in October 2005.

- Plaintiff Giles had a lengthy telephone conversation with Moody on Monday, December 5, 2005.

- Plaintiff Giles had a lengthy lunch meeting with Sharpe and delivered a packet of materials on December 2, 2005.

- Plaintiff Giles had a lunch meeting with Powell [Jefferson County Board of Education member] and delivered a packet of materials.

- Plaintiff Giles met with Potts [Jefferson County Board of Education member] and explained his position.

- Plaintiff Giles met with Schneitman again one more time before the lawsuit was filed.

- Plaintiff Giles communicated his views in writing to the board by preparing and presenting to Sharpe and Powell a packet of material regarding his complaints about the football situation, seeking termination of employment for those persons involved, prior to the December 2005 meeting.

Plaintiffs' argument that the Board's failure to place Kelley on the agenda for the December meeting constitutes a "prior restraint" on their free speech rights is without merit. As shown at trial, plaintiffs were afforded many opportunities to speak to the Board members and plaintiffs took advantage of those opportunities. Moreover, plaintiffs did not stand up and request to speak to the Board at the December meeting. Consequently, they cannot now say that the Board's failure to place them on the agenda for the December meeting constituted a prior restraint on their First Amendment rights.

Plaintiffs' reliance on the Supreme Court's decision in *Southeastern Promotions* is misplaced. The *Southeastern Promotions* case related to a Chattanooga

municipal board's denial of a permit allowing a theatrical promotions company to use a municipal theater for the public production of the musical *Hair.* The board determined that the musical was not suitable for public consumption and denied the permit months before the production was going to be performed.

The instant case does not relate to a performance in a public theater, this was a request to speak at a school board meeting about a topic that was not part of the agenda and for which the school board had no authority or responsibility. The Executive Committee of the Board, in denying plaintiffs' request to be placed on the agenda, balanced the interests of the plaintiffs with that of the Board and its agenda, and the time already spent by various board members and school officials in discussing the football situation with the plaintiffs prior to the December meeting. The jury declined to find that plaintiffs' First Amendment rights were violated, and the court concurs, as a matter of law, that the Board's denial of plaintiffs' request to be placed on the December agenda was not an unconstitutional "prior restraint" on plaintiffs' free speech rights.

<u>Defendants Did Not Engage in Unconstitutional Viewpoint Discrimination</u>

Plaintiffs next argue that defendants applied an unconstitutional restriction on their speech in a designated public forum. Citizens are not entitled to exercise their First Amendment rights whenever and wherever they wish. *Heffron v. Int'l Society for Krishna Consciousness,* 452 U.S. 640, 647 (1981); *Adderley v. Florida*, 385 U.S. 39, 47-48 (1966). Accordingly, in evaluating a citizen's right to express his opinion on public property, the Supreme Court has adopted a forum-based analysis to determine "when the Government's

interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Conrnelius v. NAACP Legal Def. & Edu. Fund, Inc.,* 473 U.S. 788, 800 (1985).  The Court has recognized three types of fora that may exist on government property: traditional public fora, designated public fora, and nonpublic fora.  Traditional public fora are those that have long been devoted to assembly and debate "by ... tradition or by government fiat," *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983), such as sidewalks and public parks.  The government can also designate a forum "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects," *Cornelius,* 473 U.S. at 802, such as open school board meetings or university spaces made available for uses typical of public fora.  Even in designated public fora, the government "is not required to indefinitely retain the open character of the facility."  *Perry,* 460 U.S. at 46.  Content-based restrictions on speech in public and designated public fora are subject to strict scrutiny.  *Putnam Pit. Inc. v. City of Cookeville,* 221 F.3d 834, 843 (6th Cir. 2000).

In contrast, "public property which is not by tradition or designation a forum for public communication is governed by different standards.  We have recognized that the 'First Amendment does not guarantee access to property simply because it is owned or controlled by the government.'" *Perry,* 460 U.S. at 46 (quoting *U.S. Postal Serv. v. Council of Greenburgh Civil Ass'n,* 453 U.S. 114, 129 (1981)).  Unlike in public and designated public fora, "control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."  *Cornelius,* 473 U.S. at 806.  That is, the

government's decision to restrict access in a nonpublic forum "need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Id.* at 808 (emphasis in the original). Moreover, "the reasonableness of the government's restriction on access to a nonpublic forum must be assessed in light of the purpose of the forum and all of the surrounding circumstances." *United Food & Commercial Workers Local 1099 v. City of Sidney,* 364 F.3d 738, 750 (6th Cir. 2004).

Defendants assert that the highly structured nature of the Jefferson County School Board meetings makes them a nonpublic forum. In *City of Madison,* the Supreme Court found that a state statute opened the school board meeting to the public and to "direct citizen involvement." *City of Madison,* 429 U.S. at 175. While characterizing that public bodies may confine meetings to certain subjects and may conduct nonpublic sessions, the Court did not characterize the forum before it but simply held that "the participation in public discussion of public business cannot be confined to one category of interested individuals." *Id.* Still, the Supreme Court in *Perry* did establish the three categories of public property and cited the school board meeting in *City of Madison* as one example of a designated public forum. *Perry*, 460 U.S. at 45. Accordingly, for the purposes of this motion, the court will characterize the Jefferson County School Board meeting as a designated public forum. *See also, Featherstone v. Columbus City Sch. Dist. Bd. Of Edu.,* 2004 WL 504546 (6th Cir. Mar. 12, 2004) ("A school board meeting, when opened to the public, is a limited public forum for discussion of subjects relating to the operation of the schools.").

Like a traditional public forum, the government's regulation of speech activity in a designated public forum is examined under strict scrutiny. *United States v. Kokinda,* 497 U.S. 720, 726-27 (1990). Thus, any government regulations that are content-based must be narrowly drawn to achieve a compelling governmental interest. *Perry,* 460 U.S. at 46. In addition, any government regulations that are content-neutral may restrict the time, place and manner of the protected speech, as long as the regulation is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).

The restriction of speech is content neutral if it is "justified without reference to the content of the regulated speech." *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 295 (1984). "The principal inquiry in determining content neutrality, in speech cases generally, and in time, place or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward,* 491 U.S. at 791. "A regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not on others." *Id.*

The regulation at issue in this case is Jefferson County Board of Education Policy 1.404 which states:

> Individuals desiring to appear before the board may request placement on the agenda by contacting the office of the superintendent five (5) days before the meeting. The person initiating the request will be notified by the superintendent or the chairman as to whether the request has been granted and

will be given five (5) minutes to speak when their topic of interest is addressed on the agenda.

The director of schools shall take appropriate steps to determine that appeals or appearance before the Board are not frivolous, repetitive, or harassing in nature.

. . .

The chairman shall have the authority to terminate the remarks of any individual who does not adhere to the above rules or chooses to be abusive to an individual board member or the Board as a whole.

It is clear that the Board's policy to limit appearances that are frivolous, repetitive or harassing in nature is not based on the Board's disagreement with any particular message, is unrelated to any particular viewpoint being expressed, and serves purposes unrelated to the particular content of the speech. The Board's policy focuses on the inherently disruptive nature of frivolous, repetitive or harassing remarks in a Board meeting and not on the expressive content of the remarks. Therefore, the court finds that Board Policy 1.404 is a content-neutral regulation of speech.

In addition, plaintiffs have not shown that Policy 1.404 was applied to them in a manner that was anything but content-neutral and viewpoint-neutral. Several courts, including the Supreme Court, have recognized the government's significant interest in conducting orderly, efficient, effective and dignified meetings of its public bodies. *See e.g., City of Madison*, 429 U.S. at 175 n. 8; *Kindt v. Santa Monica Rent Control Bd.,*, 67 F.3d 266, 271 (9th Cir. 1995) (board has "legitimate interest in conducting efficient, orderly meetings"); *White v. City of Norwalk,* 900 F.2d 1421, 1425 (9th Cir. 1990) ("City Council

meeting is still just that, a governmental process with a governmental purpose."); *Jones v. Heyman,* 888 F.2d 1328, 1332-22 (11th Cir. 1989) (City Commission has significant governmental interest "in conducting orderly, efficient meetings."); *Devine v. Village of Port Jefferson*, 849 F.Supp. 1985 190 (E.D.N.Y. 1994) (village board has "a significant interest in conducting its meeting in an orderly and effective fashion"); *Godwin v. East Baton Rouge Parish School Bd.,* 408 S.2d 1214, 1218 (La. 1981) (school "board's interest in conducting its meetings in an orderly and dignified manner is a substantial consideration and a valid governmental objective").

The Supreme Court in *City of Madison* recognized that public bodies "may confine their meetings to specified subject matter." *City of Madison,* 429 U.S. at 175 n. 8. Justice Stewart in his concurrence added that public bodies have "broad authority to structure the discussion of matters that it chooses to open to the public." *Id.* at 180. In *White,* the Ninth Circuit analyzed in some detail this significant governmental interest:

> A City Council meeting is still just that, a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with. Public forum or not, the usual First Amendment antipathy to content-oriented control of speech cannot be imported into the council chambers intact. In the first place, in dealing with agenda items, the Council does not violate the First Amendment when it restricts public speakers to the subject at hand. . . . While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing . . . it certainly may stop him if his speech becomes irrelevant or repetitious.
>
> Similarly, the nature of a Council meeting means that a speaker can become disruptive in ways that would not meet the test of actual breach of the peace, or of "fighting words" likely to provoke immediate combat. A speaker may disrupt a Council meeting by speaking too long, by being unduly

> repetitious, or by extended discussion of irrelevancies. The meeting is disrupted because the Council is prevented from accomplishing its business in a reasonably efficient manner. Indeed, such conduct may interfere with the rights of other speakers.

*White,* 900 F.2d at 1425-26. The reasoning of *White* and the other cases cited above persuades this court that the Board's interest in conducting orderly, efficient, and dignified meetings and in preventing the disruption of those meetings is a significant governmental interest. All of these cases plainly recognize an important governmental interest in limiting comments to matters directly relevant to that governmental body's business. In addition, the rule against frivolous, repetitive and harassing remarks, like other rules of decorum, serves the important governmental interest of preventing disruptions to meetings.

Plaintiffs argue that Policy 1.404 prevented them from speaking at all, unnecessarily freezing speech, rather than relying on the policy provision that would have allowed the Chairman to terminate Kelley's remarks after he started speaking if his speech became repetitious, frivolous or harassing. Plaintiffs have submitted no authority for the proposition that the Board must always wait until the speaker actually utters infringing words before it can enforce its rules. Such an approach seems unreasonable when the Board essentially knows what the speaker intends to say and the Board is enforcing restrictions based on relevancy. When a speaker discloses the topic of his comments in advance of the meeting, the Board should be able to rely on that disclosure in determining whether the speaker's comments will relate to a matter directly relevant to business of the Board. *See Jones v. Heyman*, 888 F.2d at 1331-34.

The facts presented at trial establish the following relevant circumstances: Kelley spoke before the Board on the football matter at the November meeting. At least five days prior to the December meeting, Kelley requested to be placed on the agenda for the December Board meeting. Neither Kelley nor any of the plaintiffs told the Board that they intended to speak on a subject other than the football matter. From Kelley's prior appearance at the November meeting and the numerous communications plaintiff Giles had with various Board members, the Board knew that Kelley would be appearing at the December meeting to rehash the football matter. Also, before the December meeting, plaintiff Giles had given a packet of material to Board members Sharpe and Powell intended to evidence the wrongs Giles believed that school officials had committed. From all the above circumstances, the Board could reasonably infer that Kelly intended to address the Board on the football matter, a matter that was not directly relevant to Board business and that the Board had previously investigated and found to be without merit. Therefore, the Board's decision not to place plaintiffs on the December agenda served the Board's significant governmental interests in limiting speakers to relevant topics and in preventing disruption of Board meetings. *Id.*

In addition, the Board's policy is narrowly tailored to achieve these significant governmental interests. To be narrowly tailored, the court need not find that the regulation was the least restrictive or least intrusive means for doing so. *Ward,* 491 U.S. at 798. Rather, the requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation." *Id.* at 799. The court finds that Policy 1.404 promotes a substantial

14

governmental interest in orderly, efficient and dignified meetings and that without this policy the Board's ability to conduct its meetings would be compromised. As stated previously, the court also finds that the Board's judgment call under these circumstances was a reasonable attempt to confine speakers to a relevant topic and to avoid remarks that were frivolous, repetitive and harassing.

As for the last requirement of ample alternative channels of communication, as related above, plaintiffs had ample alternative channels of communication which they utilized to place their views before the Board and its members. Plaintiffs had already provided packets of material to members of the Board, had contact with individual Board members, and had spoken to various school officials about the football matter. Consequently, the court finds that the defendants afforded ample alternative channels to the plaintiffs for communicating their personal concerns to the Board. Accordingly, the court finds that plaintiffs are not entitled to judgment as a matter of law on their claim that Policy 1.404 was an unconstitutional restriction on their speech in a designated public forum.

<u>Policy 1.404 is not Facially Unconstitutional</u>

Plaintiffs next argue that Policy 1.404 is unconstitutional on its face as it impermissibly restricts speech. Policy 1.404 proscribes the method by which citizens were to bring their comments to the Board. The citizen was required to obtain permission prior to speaking at the meeting and, if authorized, he was limited to a five minute presentation. The policy provides that the "Director of Schools shall take appropriate steps to determine

15

that appeals or appearances before the Board are not frivolous, repetitive or harassing in nature." This regulation is the kind of reasonable time, place and manner restriction that preserves the Board's legitimate interest in conducting efficient, orderly meetings.

Moreover, the policy provides for further appeal in writing to the Board as a whole if a citizen is not satisfied with the decision of the Director of Schools. A public body has broad authority to structure the discussion of matters that it chooses to open to the public. *City of Madison,* 429 U.S. at 180. The Board is not prohibited from limiting discussion at public meetings to those subjects that it believes will be illuminated by the views of others and in trying to best serve its informational needs while rationing its time. *Id.* To permit repetitious questions and arguments not related to an agenda topic would be "to deny the presiding officer the authority to regulate irrelevant debate . . . at a public meeting . . . would cause such meetings to drag on interminably, and deny others the opportunity to voice their opinions." *Jones,* 888 F.2d at 1333. As a designated public forum, the Board meetings are not open for endless public commentary speech but instead are simply a limited platform to discuss the topic at hand. Policy 1.404 on its face simply does not impermissibly restrict speech, but is a reasonable content-neutral time, place and manner restriction that is not intended to suppress a particular viewpoint. Accordingly, the court finds that Policy 1.404 is not facially unconstitutional.

**Motion for New Trial**

Plaintiffs also move for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure based on the following grounds: (1) the verdict was against the clear

16

weight of the evidence; (2) the court failed to properly instruct the jury on the law relating to prior restraint; (3) the court gave an erroneous preliminary instruction at the beginning of trial; and (4) the court improperly admitted evidence of plaintiffs' communications with school administrators and individual Board members.

Under the Federal Rules of Civil Procedure, a court may set aside a jury verdict and grant a new trial "to all or any of the parties and on all or part of the issues ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). Courts have generally interpreted this language to allow a new trial when a jury has reached a "seriously erroneous result," which may occur when (1) the verdict is against the weight of the evidence; (2) the damages awarded are excessive; or (3) the trial was unfair to the moving party in some fashion (i.e., the proceedings were influenced by prejudice or bias). *See Holmes v. City of Massillon,* 78 F.3d 1041, 1045-46 (6th Cir. 1996). The burden of demonstrating the necessity of a new trial is on the moving party, *Clarksville-Montgomery Co. Sch. Sys. v. U.S. Gypsum Co.,* 925 F.2d 993, 1002 (6th Cir. 1991), and the ultimate decision whether to grant such relief is a matter vested within the sound discretion of the district court. *See Anchor v. O'Toole,* 94 F.3d 1014, 1021 (6th Cir. 1996); *Davis v. Jellico Community Hosp., Inc.,* 912 F.2d 129, 133 (6th Cir. 1990) (limiting a court's responsibility to preventing an injustice); *Browne v. Signal Mountain Nursery,* 286 F.Supp.2d 904, 908 (E.D.Tenn. 2003).

<u>The Jury's Verdict was not Against the Weight of the Evidence</u>

When ruling on a new trial motion claiming the verdict was against the weight of the evidence, the district court should "compare the opposing proofs and weigh the evidence." *Conte v. Gen. Housewares Corp.,* 215 F.3d 628, 637 (6th Cir. 2000); *Toth v. Yoder Co.,* 749 F.2d 1190, 1197 (6th Cir. 1984); *see also J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1487 (6th Cir. 1991). The court should deny the motion and leave the jury's verdict undisturbed so long as it "could reasonably have been reached." *See Conte,* 215 F.3d at 637-38. Thus, a motion for a new trial should be denied "if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact." *Mosley v. Kelly,* 65 F.Supp.2d 725, 739 (E.D. Tenn. 1999), quoting *Powers v. Bayliner Marine Corp.,* 83 F.3d 789, 796 (6th Cir. 1996). A jury's verdict "should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *J.C. Wyckoff,* 936 F.2d at 1487. Rather, the court must compare the offered evidence and set aside the jury's verdict only if it is against the clear weight of the evidence as a whole. *Webster v. Edward D. Jones & Co.,* 197 F.3d 815, 818 (6th Cir. 1999).

Plaintiffs argue that under the governing law, it was "utterly unreasonable" for the jury to find for defendants with respect to plaintiffs' First Amendment claims. The court disagrees for the reasons stated above: plaintiffs were not prevented from communicating with the Board or its members, and in fact, had spoken at the November Board meeting; plaintiffs had numerous conferences with school officials and board members both before

18

and after the November meeting, and had furnished written communications to Board members Sharpe and Powell prior to the December meeting; plaintiffs did not ask to speak at the December meeting although they were all present at the meeting; and they did not submit a written petition to speak to the Board as provided in Policy 1.404. Even more telling, is the testimony of plaintiff parents Giles and Lowery that they did not intend to speak at the Board meeting.

Having reviewed the evidence and considered the strengths and weaknesses of each side's proof, the court concludes it would not have been unreasonable for the jury to conclude plaintiffs failed to meet their burden of proof to show that defendants' denial of plaintiffs' request to be placed on the agenda for the December board meeting was an unconstitutional violation of plaintiffs' First Amendment rights. Nor was it unreasonable for the jury to believe the defendants' witnesses, who testified that the Board conducted an investigation into the football matter and determined that school officials had acted appropriately; that plaintiffs had communicated their concerns to school officials, Board members and the public via news conferences, meetings and letters; and that any further discussion of the matter at the December meeting would be frivolous, repetitive and harassing.

Thus, viewing the case as a whole, assessing each of the witnesses' credibility, and examining the content and detail of their testimony, the court is unable to conclude the jury's verdict is a "seriously erroneous result," *See Holmes,* 78 F.3d at 1046-47, or runs contrary to the "clear weight of the evidence." *See J.C. Wyckoff,* 936 F.2d at

1487 (stating a jury's verdict "should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable").  Accordingly, the court will deny plaintiffs' motion for a new trial on the basis that the jury's verdict was against the weight of the evidence.

<u>The Jury was Properly Instructed as to the Law on Prior Restraint</u>

Plaintiffs next argue that they are entitled to a new trial because the court failed to properly instruct the jury on the law relating to the First Amendment.  Specifically, plaintiffs assert that the court failed to give instructions regarding "clear and present danger," in connection with the jury instruction related to prior restraint as articulated by the Sixth Circuit in *CBS, Inc. v. Young,* 522 F.2d 234, 238 (6th Cir. 1975).  The court finds plaintiffs' argument without merit.

The instant case presents a different issue than the court faced in *CBS.*  The *CBS* case related to a gag order entered by the district court prohibiting persons involved in a criminal racketeering lawsuit from talking with anyone about the case.  Here, plaintiffs presented their complaints to the Board at the November meeting, to individual Board members before and after the November meeting, and to the general public with news conferences.

There simply was no "clear and present danger" that the information that the plaintiffs wanted to present at the December meeting was not already available to the public and to the Board and school officials alike.  The court declined to give the jury

instruction requested by the plaintiffs because it did no reflect a correct statement of the law as it pertained to the circumstances in this case. The court finds that the instruction given to the jury was appropriate.

<u>Plaintiffs Were Not Prejudiced by the Preliminary Jury Instruction</u>

Plaintiffs next argue that the court gave an erroneous preliminary instruction at the start of the trial which prejudiced their right to a fair trial. Plaintiffs challenged the introductory instructions and the court admonished the jury that the preliminary comments of the court were made to give the jury some context within which to understand the lawsuit they would be hearing and that the legal standard to be applied would be provided orally and in writing at the conclusion of the trial.

At the conclusion of the proof , the jury instructions were given and the jury was specifically charged:

> At the start of the case, I gave you some guidelines on the applicable law. I will now instruct you on the law that you should use in reaching your verdict. These instructions on the applicable law supersede any earlier statements on the law which I gave you at the start of the case.

This curative instruction was given to the jury at the request of the plaintiffs and with the approval of counsel prior to the jury's deliberations. Jury instructions are not erroneous if "they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its determination." *Kitchen v. Chippewa Valley Schools,* 825 F.2d 1004, 1012 (6th Cir. 1987). A judgment can be reversed only if the instructions, "viewed as a whole, were confusing, misleading and prejudicial." *Id.* at 1011; *see also*

*Vance v. Spencer Co. Public Sch.,* 231 F.3d 253, 263 (6th Cir. 2000). Upon review, the court finds that the jury instructions were in accord with the applicable law and no harmful error occurred. Accordingly, the court will deny plaintiffs'' motion for a new trial on the basis of an erroneous preliminary jury instruction.

<u>Evidence of Plaintiffs' Communications with School Officials
and Board Members was Relevant and Admissible</u>

At trial, defendants offered voluminous evidence relating to plaintiffs' communications with school officials, Board members and others, which plaintiffs claim was irrelevant to the evaluation of their First Amendment claims and which served to confuse the jury and prejudice the plaintiffs. The court disagrees. Testimony regarding plaintiffs' communications with the Board members and school officials is certainly relevant and probative as to their First Amendment claims. At the November Board meeting, Kelley asked the Board to conduct an investigation into the football situation. The individual board members did conduct an investigation and they determined that no formal board action was necessary. Thus, the evidence presented could lead a reasonable jury to conclude that any further discussion before the Board on this matter would be frivolous, repetitive and harassing to the Board and school officials. The testimony also served to show that plaintiffs had ample channels of communication with the Board and school officials which they utilized to make their complaints about the football situation known. Thus, plaintiffs were not prevented from exercising their First Amendment rights. This testimony clearly showed that plaintiffs were afforded numerous opportunities to address the Board both at the November meeting and outside of the meeting, such that the jury found that plaintiffs'

First Amendment rights were not violated by the Board's refusal to place Kelley on the agenda for the December meeting. Because the evidence of plaintiffs' communications with school officials outside the board meetings was relevant and probative of plaintiffs' First Amendment claims, plaintiffs' have failed to show that it was error to admit this evidence at trial.

## Attorney Fees Under 42 U.S.C. § 1988

Defendants move the court for an order awarding them attorneys fees pursuant to 42 U.S.C. § 1988 on the grounds that they are the prevailing parties and the plaintiffs' suit was unreasonable, frivolous, groundless, meritless, vexatious, or brought to harass or embarrass the Jefferson County Board of Education and the individual defendants.

Under the "American Rule" parties are expected to bear their own costs of litigation. *See Jones v. Continental Corp.,* 789 F.2d 1225, 1228 (6th Cir. 1986). There are several exceptions to this general rule, however, including 42 U.S.C. § 1988(b). Section 1988(b) provides that the prevailing party in a suit under 42 U.S.C. § 1983, or 42 U.S.C. § 1985, may recover attorney's fees as part of the costs of the case. A prevailing plaintiff in a civil rights action ordinarily may recover attorney's fees as a matter of course. A prevailing defendant may recover attorney's fees only where the suit was vexatious, frivolous, groundless, meritless, unreasonable, or bought to harass or embarrass. *American Family Life Assur. Co. of Columbus v. Teasdale,* 564 F.Supp. 1571 (E.D.Mo. 1983), *aff'd* 733 F.2d 559. The Sixth Circuit in *Jones* said:

An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct. The Supreme Court has indicated that:

A plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless . . . and, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with attorney's fees incurred by the defense.

*Id.* at 1232, (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422 (1978)).

The actions of the plaintiffs in filing their complaint for violation of freedom of speech rights, under the facts known to the plaintiffs and as brought to light by the testimony presented to the jury, give evidence that their § 1983 claim was frivolous, groundless, and meritless. While § 1983 provides a remedy for violation of an individual's freedom of speech rights, the evidence presented to the jury revealed that the plaintiffs did have opportunity to speak to the Board on multiple occasions; that they submitted written letters and packets of information to the Board and the individual members; and most telling, that they did not ask to speak at the December 2005 meeting although they were present at the meeting. Following hearing two days of testimony, the jury determined that plaintiffs' claims were without merit after only two hours of deliberation. The evidence proved that the plaintiffs had ample opportunity to assert their free speech claims before the Board and they did so. It is clear to the court that the true purpose of plaintiffs in filing this action was to continue their vendetta against the Board and the individual defendants for perceived wrongful dismissal of their sons from the football team. Plaintiff's lawsuit was designed not to vindicate their legal rights, but to expose the Board and the individual

defendants to public obloquy, harassment, and the financial and emotional hardship of defending groundless charges that the defendants violated the First Amendment rights of plaintiffs.

For these reasons the court will grant the defendants' motion for attorney's fees. The court finds that they are prevailing parties, and the plaintiffs' First Amendment claims were without foundation and were filed to harass and embarrass the defendants. Where a civil rights plaintiff uses the legal system as a vehicle of vengeance, he must be prepared to pay the price. Counsel for the defendants have filed an affidavit in support of their request for attorney's fees and costs [*see* Doc. 108]. The court has reviewed the request and finds the billable rates and hours reasonable. The court notes that the plaintiffs have not objected to either the rates or hours. Therefore, the court finds that the plaintiffs are liable to the defendants for the following amounts of attorney's fees and costs:

| | |
|---|---|
| Attorney's Fees | $81,860.50 |
| Expenses | 5,355.99 |
| Total Attorney Fees & Expenses | $87,216.49 |

Conclusion

For the reasons stated above, plaintiffs' motion for judgment as a matter of law or, alternatively, for a new trial [Doc. 110] is hereby **DENIED** in its entirety. The jury verdict is **AFFIRMED.**

**FURTHER**, defendants' motion for attorney fees [Doc. 108] is **GRANTED,** whereby plaintiffs are **ORDERED** to pay to defendants attorney's fees and costs in the amount of $87,216.49.

**ENTER:**

_____ s/ Thomas W. Phillips _____
United States District Judge